UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUDITH HANCOCK, | CASE NO. C16-1697JLR |
| Plaintiff, | ORDER DENYING MOTION |
| v. | FOR PARTIAL SUMMARY JUDGMENT |
| AETNA LIFE INSURANCE COMPANY, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendants Aetna Life Insurance Company ("Aetna"), the

Boeing Company Employee Health and Welfare Plan (Plan 503) ("Plan 503"), and

Employee Benefit Plans Committee's ("the Committee") (collectively, "Defendants")

motion for partial summary judgment.  (Mot. (Dkt. # 26).)  Ms. Hancock opposes

Defendants' motion.  (Resp. (Dkt. # 28).)  The court has considered the motion, the

parties' submissions in opposition to and support of the motion, the relevant portions of

1    the record, and the applicable law.  Being fully advised,[1] the court denies Defendants'

2    motion for the reasons set forth below.

## II.    BACKGROUND

4            This case arises from Aetna's denial of long-term disability benefits ("LTD

5    benefits") to Ms. Hancock.  (*See* SAC (Dkt. # 24) ¶¶ 1.2, 4.40, 4.51.)  Ms. Hancock

6    began working at the Boeing Company ("Boeing") in 1989 and remained at Boeing until

7    October 2012, when she took leave for cancer treatment.  (Hancock Decl. (Dkt. # 31)

8    ¶ 3.)  Ms. Hancock worked as a Human Resources Generalist at the time she took leave.

9    (*See* Admin. Record ("AR") (Dkt. # 27) at AET000272.)[2]

10           While at Boeing, Ms. Hancock participated in the Group Life and Accident and

11   Health Insurance Policy ("the Plan").  (*See generally id.* at AET000001-191.)  Aetna

12   issued the Plan to Boeing (*see id.*), and Ms. Hancock alleges that Aetna is an

13   administrator and fiduciary of the Plan as those terms are defined under the Employee

14   Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (SAC

15   ¶¶ 4.8-4.9).  The Committee also administers the Plan.  (*Id.* ¶ 4.3.)  Plan 503 is an

16   "employee benefit plan" within the meaning of ERISA.  (*Id.* ¶¶ 4.2.)

17   //

---

[1] Ms. Hancock requests oral argument.  (*See* Resp. at 1.)  The court determines, however, that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4); *cf. Jasinski v. Showboat Operating Co.*, 644 F.2d 1277, 1278 (9th Cir. 1981) (holding that a court may not grant summary judgment without oral argument when the party opposing the motion for summary judgment timely requests oral argument).

[2] The court cites the Bates-stamped page numbers of the administrative record.

The Plan defines "disabled" for purposes of LTD benefits in pertinent part:

From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:
• you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
• your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation (this is any gainful activity for which you are, or may reasonably become fitted by education training or experience. It does not include work under an approved rehabilitation program) solely because of: disease; or injury.

(*See id.* at AET000058 (emphasis omitted); *see also id.* at AET000061; SAC ¶ 4.20.)

Ms. Hancock alleges that on October 3, 2012, she became "unable to perform the material duties of her own occupation" when she underwent surgery and "extensive chemotherapy" to treat malignant cancer. (*Id.* ¶ 4.22.) Ms. Hancock applied for short-term disability benefits under the Plan, and Aetna agreed that Ms. Hancock was disabled under the Plan and entitled to short-term disability benefits. (AR at AET000530-31.)

Aetna later found Ms. Hancock disabled for purposes of receiving LTD benefits. (*Id.* at AET001120-21, AET001265-66.) But on February 25, 2016, Aetna terminated Ms. Hancock's LTD benefits effective February 26, 2016. (*Id.* at AET000980-83.) Ms. Hancock appealed the termination on August 15, 2016 (*id.* at AET001215-1589), and Aetna received Ms. Hancock's appeal on August 18, 2016 (*id.* at AET002173). In support of her appeal, Ms. Hancock provided a declaration from her doctor, her own declaration, medical records, and medical journal articles describing her condition. (*See*

*id.* at AET001215-1589) She contends that she is disabled by the following conditions: "peripheral neuropathy and a type of cognitive impairment sometimes referred to as 'chemo brain'" (SAC ¶ 4.33; *see also* AR at AET001240); Sjogren's syndrome (SAC ¶ 4.34; AR at AET001240); a lack of feeling in her fingertips and feet, burning pain in her fingertips, sharp pain in her hands, burning pain in her feet and lower legs, painful cramping in her toes and calves, and swollen ankles and feet (SAC ¶ 4.35; AR at AET001240-41). Ms. Hancock also takes a medication that causes fatigue, dizziness, difficulty concentrating, confusion, and memory issues. (SAC ¶¶ 4.37-4.38; AR at AET001241.) Because of these conditions, Ms. Hancock alleges that she is "unable to work at any reasonable occupation." (*Id.* ¶ 4.39.)

The applicable ERISA regulations gave Aetna 45 days to decide Ms. Hancock's appeal unless special circumstances warranted an additional 45 days to consider the appeal. *See* 29 C.F.R. § 2560.503-1(i)(1)(i); id. § 2560.503-1(i)(3)(i). On September 13, 2016, Aetna confirmed with Ms. Hancock and her counsel that Aetna had received all of the records Ms. Hancock intended for Aetna to consider in her appeal. (AR at AET000992, AET002173.) On the same day, Aetna also contacted an independent third party to conduct a peer review of Ms. Hancock's file. (*Id.* at AET002189-91.) Aetna assigned the peer review on September 14, 2016. (*Id.* at AET002191.) On September 26, 2016, the fortieth day after Ms. Hancock appealed Aetna's LTD benefits determination, Aetna sent Ms. Hancock a notice that Aetna was invoking a 45-day extension to decide her appeal. (*Id.* at AET000993.) The notice informed Ms. Hancock that her appeal would be decided by November 10, 2016, and that the reason for the

extension was to give the peer reviewer enough time to complete his review.  (*Id.*)  The

peer reviewer completed his review on September 28, 2016.  (*Id.* at AET002192-93.)

Aetna informed Ms. Hancock on October 20, 2016, that Aetna was upholding its

decision to deny LTD benefits under the Plan.[3]  (*Id.* at AET000997-99.)  "[B]ased on the

clinical review and vocational review," Aetna concluded that Ms. Hancock was "no

longer considered disabled from any occupation."  (*Id.* at AET000982.)  Aetna decided

Ms. Hancock's appeal in 64 days.  (*See id.* at AET000997-99.)

Ms. Hancock brings two claims under ERISA:  (1) "to recover the long-term

disability benefits due her under the Plan, to enforce her rights under the Plan[,] and to

clarify her rights to future benefits under the Plan" (SAC ¶ 5.4); *see also* 29 U.S.C.

§ 1132(a)(1)(B); and (2) breach of fiduciary duty (SAC ¶¶ 5.6-5.18); *see also* 29 U.S.C.

§ 1132(a)(3).  Ms. Hancock asserts six theories of breach of fiduciary duty:  (1)

unreasonably delaying and then denying Ms. Hancock's appeal; (2) unreasonably failing

to investigate all of the bases on which to pay Ms. Hancock's claims and refusing to give

her interests or the interests of the Plan at least as much consideration as Aetna gave its

own; (3) unreasonably failing to adopt and implement reasonable standards to promptly

and fairly investigate, process, and adjudicate Ms. Hancock's appeal; (4) unreasonably

engaging in a selective review of the evidence to minimize the evidence supporting the

continuation of benefits while focusing exclusively on evidence supporting the

---

[3] On October 6, 2016, Aetna sent Ms. Hancock a request to toll the appeal period to allow her doctor to comment on the peer review.  (*Id.* at AET000996.)  Ms. Hancock's counsel objected to the tolling, and Aetna ultimately did not toll the appeal period.  (*Id.* at AET001158.)

termination of benefits; (5) unreasonably failing to establish administrative processes and safeguards to ensure and verify appropriately consistent decisionmaking; and (6) unreasonably failing to train and supervise employees to ensure they are aware of such administrative processes and safeguards.  (SAC ¶ 5.10.)

On March 15, 2017, Defendants filed a motion for partial summary judgment. (Mot. at 1.)  Defendants contend that Ms. Hancock's breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) should be dismissed as a matter of law because (1) Aetna did not breach its fiduciary duty by seeking a 45-day extension to decide Ms. Hancock's appeal (*id.* at 9-10), (2) Aetna's policies and procedures comply with applicable Department of Labor ("DOL") regulations regarding the time for deciding LTD benefits appeals (*id.* at 10-11), (3) Aetna properly applied its timing policies and procedures to the adjudication of Ms. Hancock's appeal (*id.* at 11-12), (4) any recovery under Section 1132(a)(3) is barred as duplicative relief (*id.* at 13-14), and (5) public policy considerations militate against finding a breach of fiduciary duty (*id.* at 14-15).  Ms. Hancock opposes Defendants' motion and argues that her fiduciary duty claim is cognizable because she seeks different relief under Section 1132(a)(3) than under Section 1132(a)(1)(B).  (Resp. at 20.)  Ms. Hancock also asserts that Defendants' motion for summary judgment fails to address most of her theories of breach of fiduciary duty and that there are genuine factual disputes regarding whether Defendants unreasonably delayed a decision on her appeal.[4] (*Id.* at 22-24.)  The court now addresses Defendants' motion.

---

[4] Ms. Hancock also raises discovery issues between the parties.  (Resp. at 3-4.)  However, Ms. Hancock does not seek a Federal Rule of Civil Procedure 56(d) continuance of Defendants'

# III.    ANALYSIS

## A.    Legal Standard

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d

---

motion to allow additional time to conduct discovery before the court rules on the motion. (*See id.*); Fed. R. Civ. P. 56(d). Moreover, the court preliminarily addressed the parties' discovery disputes in a telephonic hearing. (*See* 4/17/17 Min. Entry (Dkt. # 42).) For these reasons, the court does not substantively address in this order the discovery issues that Ms. Hancock raises.

1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id*. at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Furthermore, the court may consider only materials that are capable of being presented in an admissible form. *See* Fed. R. Civ. P. 56(c)(2); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid summary judgment." *Estrella v. Brandt*, 682 F.2d 814, 819-20 (9th Cir. 1982); *see also Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."). Nor can the

plaintiff "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

**B.    Defendants' Motion**

Under 29 U.S.C. § 1132(a)(3), a plan participant may bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."[5] 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) "authorizes lawsuits for individualized equitable relief." *McGlasson v. Long Term Disability Coverage for All Active Full-Time & Part-Time Emps.*, 161 F. Supp. 3d 836, 842 (D. Ariz. 2016) (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)).  A plaintiff asserting a fiduciary misconduct claim under Section 1132(a)(3) must allege "both (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, and (2) that the relief sought is appropriate equitable relief."[6] *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (internal quotations and citations omitted); *see also Mullin v. Scottsdale*

---

[5] No party has raised whether and to what extent Plan 503 and the Committee may be held liable for Aetna's actions, which are at the heart of the motion for partial summary judgment.  (*See* SAC ¶¶ 5.10, 5.16, 5.18 (alleging that Aetna violated its fiduciary duties, the Committee is aware of Aetna's actions, and the Plan has failed to implement and maintain appropriate procedures).)  Accordingly, the court does not address those issues at this time.

[6] Ms. Hancock's response includes two arguments related to insurer mismanagement and misconduct.  (*See* Resp. at 15-18.)  For example, Ms. Hancock states that "ERISA's lack of compensatory or punitive damages, and its preemption of state law, create incentives for insurer misconduct."  (*Id.* at 16.)  Ms. Hancock also characterizes Section 1132(a)(3) as "a remedy for

*Healthcare Corp. Long Term Disability Plan*, No. CV-15-01547-PHX-DLR, 2016 WL

107838, at *2 (D. Ariz. Jan. 11, 2016).  Equitable relief under Section 1132(a)(3) is

limited to "those categories of relief that were *typically* available in equity (such as

injunction, mandamus, and restitution, but not compensatory damages)."  *Mertens v.*

*Hewitt Assocs.*, 508 U.S. 248, 256 (1993).

1. Duplicative Relief

The parties dispute whether Ms. Hancock may simultaneously bring a claim under

Section 1132(a)(1)(B) for denial and clarification of her rights to benefits and Section

1132(a)(3) for equitable relief.  (*See* Mot. at 13-14; Resp. at 19-20.)  Defendants argue

that Section 1132(a)(1)(B) provides Ms. Hancock adequate relief and renders any relief

under Section 1132(a)(3) duplicative.  (Mot. at 13-14 (arguing that Ms. Hancock's breach

of fiduciary duty claim "simply attempts to 'repackage' the benefit denial claim as it is

based on the same injury—denial of LTD benefits—and this is fatal to the breach of

fiduciary duty claim").)  Ms. Hancock contends that her "two claims allege different

injuries and pursue different relief."  (Resp. at 20.)

Section 1132(a)(3) is a "catchall" or "safety net" designed to "offer[] appropriate

equitable relief for injuries caused by violations that [Section 1132] does not elsewhere

adequately remedy."  *Varity*, 516 U.S. at 512.  A plaintiff "may not resort to this

equitable catchall provision to seek the same relief" that Section 1132(a)(1)(B) affords.

*Wise v. Verizon Commc'ns*, 600 F.3d 1180, 1190 (9th Cir. 2010); *see also McGlasson*,

insurer misconduct in the ERISA context." (*Id.* at 17.)  The court need not address these
arguments in ruling on Defendants' motion and accordingly expresses no opinion on their merits.

161 F. Supp. 3d at 844 (stating that a plaintiff is "barred from obtaining a duplicative *remedy* under ERISA"). But Section 1132(a)(3) "claims [are] cognizable in conjunction with [Section 1132](a)(1)(B) claims 'particularly where the relief sought in connection with each claim is distinct.'" *Englert v. Prudential Ins. Co. of Am.*, 186 F. Supp. 3d 1044, 1047 (N.D. Cal. 2016) (quoting *Bush v. Liberty Life Assurance Co. of Bos.*, 77 F. Supp. 3d 900, 908 (N.D. Cal. 2015)).

The Ninth Circuit recently addressed simultaneous claims under Sections 1132(a)(3) and 1132(a)(1)(B) in *Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948 (9th Cir. 2016). In deciding an appeal from a grant of summary judgment, the court concluded that "plaintiffs [may] plead alternate theories of relief" under the two statutory provisions "without obtaining double recoveries." *Id.* at 961. The court stated that although "[s]ome of our [earlier] cases held that litigants may not seek equitable remedies under 1132(a)(3) if 1132(a)(1)(B) provides adequate relief," subsequent Supreme Court case law compelled the Ninth Circuit to overrule its earlier holdings to that effect. *Id.* at 962. Because the plaintiff could simultaneously proceed on both claims, the Ninth Circuit concluded that "the instant case turns on a factual determination of whether Liberty Mutual breached its fiduciary duty" and concluded that factual issues precluded summary judgment on that claim. *Id.* Thus, even at the summary judgment stage, a plaintiff may proceed with simultaneous claims under Sections 1132(a)(1)(B) and (a)(3). *Id.* at 961. The appropriate inquiry at this stage is not whether the Section 1132(a)(3) claim would ultimately afford duplicative relief if Ms. Hancock also prevails on her Section 1132(a)(1)(B) claim, but whether there is a genuine dispute of material

fact allowing the Section 1132(a)(3) claim to proceed.[7]  *See id.* at 962; *see also Allbaugh v. Cal. Field Ironworkers Pension Tr.*, No. 2:12-cv-00561-JAD-GWF, 2016 WL 6138244, at *11 (D. Nev. Oct. 19, 2016); *Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014) ("Courts of this district have found that (a)(3) claims remain viable even when an (a)(1)(B) claim is asserted, particularly where the relief sought in connection with each claim is distinct.").

The court concludes that Ms. Hancock seeks different remedies under the respective statutory provisions—compensatory relief for the alleged denial of benefits and injunctive relief for the alleged breach of fiduciary duty.  Specifically regarding the Section 1132(a)(3) claim, Ms. Hancock seeks a two-part injunction requiring Aetna to (1) establish administrative processes and safeguards to ensure and verify appropriately consistent decision making, and (2) train and supervise its employees to ensure they are aware of and follow administrative processes and procedures.  (SAC ¶ 5.11; *see also id.* ¶¶ 5.15-5.18.)  This relief is not available to her under Section 1132(a)(1)(B).  *Compare* 29 U.S.C. § 1132(a)(1)(B), *with id.* § 1132(a)(3).

Ms. Hancock may ultimately fail in her bid for injunctive relief because such relief could duplicate any recovery under Section 1132(a)(1)(B).  As Ms. Hancock

---

[7] Because of *Moyle*, Defendants' reliance on *Rochow v. Life Insurance Co. of North America*, 780 F.3d 364, 372 (6th Cir. 2015), is misplaced.  (*See* Mot. at 14.)  The court in *Rochow* held that a claimant may simultaneously bring claims under both sections "only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under [Section 1132(a)(1)(B)] is otherwise shown to be inadequate."  780 F.3d at 372.  However, as *Moyle* makes clear, Ninth Circuit law does not prohibit both claims unless the claims result in a double recovery, and whether Section 1132(a)(1)(B) affords adequate relief is no longer an appropriate consideration.  823 F.3d at 962.

acknowledges, the effect of the injunction she seeks would be "that those activities and practices do not again result in wrongful termination of her benefits and future delays receiving those benefits." (Resp. at 20; *see also* SAC ¶ 4.72.) The practical effect of the injunction may therefore be "nothing more than a . . . . clarif[ication of Ms. Hancock's] rights to future benefits under the terms of the plan,'" and that relief is available under Section 1132(a)(1)(B). *Englert*, 186 F. Supp. 3d at 1049; *see also* 29 U.S.C. § 1132(a)(1)(B) (providing that a participant may bring a civil action "to clarify his rights to future benefits under the terms of the plan"); (SAC ¶ 5.4.) However, the court cannot conclude as a matter of law that Ms. Hancock would double recover because the viability of Ms. Hancock's Section 1132(a)(1)(B) claim is not currently before the court. *See Moyle*, 823 F.3d at 961 (stating that, where a plaintiff has also pleaded a Section 1132(a)(1)(B) claim, the viability of a Section 1132(a)(3) claim at the summary judgment stage turns on whether there is a factual dispute regarding a breach of fiduciary duty). Because Ms. Hancock may not be entitled to relief under Section 1132(a)(1)(B), Ms. Hancock would not necessarily recover twice if she were to prove that Aetna breached its fiduciary duty and obtain an injunction appropriately tailored to remedy that breach. *See Mullin*, 2016 WL 107838, at *2 (stating the elements of an ERISA breach of fiduciary duty claim).

Defendants further argue that even if Ms. Hancock may seek injunctive relief, she seeks plan-wide injunctive relief under the incorrect statutory provision. (Reply at 6; *see also id.* at 7 ("Plaintiff asserts that she is seeking individual relief but the underlying intent of her requested relief is to overhaul Aetna's policies related to training,

decision-making, and supervision of employees.").)  The court agrees that Ms. Hancock

cannot seek plan-wide injunctive relief under Section 1132(a)(3) because that statutory

provision only provides individualized equitable relief.  (*See* Reply at 6-8); *Varity*, 516

U.S. at 509-10; *cf. Mertens v. Black*, 948 F.3d 1105, 1106 (9th Cir. 1991) (holding that

plaintiffs' claims were individual where they did not purport to represent the plan or seek

a recovery for the plan); *compare* 29 U.S.C. § 1132(a)(3), *with id.* § 1132(a)(2).  Ms.

Hancock must seek any plan-wide relief under Section 1132(a)(2).  *See McGlasson*, 161

F. Supp. 3d at 840 ("Plaintiff's request for an injunction . . . is necessarily limited to an

injunction for his sole benefit to bar certain conduct on the part of Defendants in the

event the parties have future interactions related to Plaintiff's LTD benefits after the

lawsuit is resolved.").  However, Ms. Hancock does not assert a Section 1132(a)(2) claim

or appear to seek such relief.  (*See generally* SAC; Resp.)  The parties have not briefed—

and the court does not decide herein—the merits of any proposed injunction.  (*See*

*generally* Mot.; Resp.; Reply.)  Furthermore, although Ms. Hancock references Aetna's

handling of several other Plan participants' claims (*see* Resp. at 4-12), that discussion

does not transform Ms. Hancock's claim for individualized relief into one for plan-wide

relief.[8]  Accordingly, the court confirms that Ms. Hancock may seek only individualized

---

[8] Ms. Hancock addresses the claims-handling process for eight other Plan participants
who her attorney represented in their cases alleging that Aetna improperly denied LTD benefits.
(*See* Resp. at 4-12.)  Ms. Hancock asserts that these eight cases demonstrate that Aetna engages
in a pattern and practice of failing to abide by ERISA and the terms of the Plan.  (*See id.* at 4.)
Defendants argue that this evidence is inadmissible.  (Reply at 8.)  The court concludes that the
evidence is irrelevant to its analysis and declines to determine whether the evidence is
admissible.  Defendants have not met their initial burden of demonstrating a lack of a genuine
dispute as to Ms. Hancock's breach of fiduciary duty claim, which means that the court need not

equitable relief under Section 1132(a)(3), *McGlasson*, 161 F. Supp. 3d at 842, and the

court's conclusions regarding Defendants' motion are based on Ms. Hancock's pursuit of

such individualized relief.

Because Ms. Hancock is not precluded from bringing a Section 1132(a)(3) claim

simply because she also brings a Section 1132(a)(1)(B) claim, the court turns to whether

Defendants have demonstrated the lack of a genuine dispute of material fact as Ms.

Hancock's breach of fiduciary duty claim.

2.  Theories of Breach of Fiduciary Duty

Defendants argue that Ms. Hancock's breach of fiduciary duty claim fails on the

merits because "Aetna processed [Ms. Hancock's] claim in a timely and efficient manner

in accordance with its own policies and procedures and the regulations set forth by the

DOL." (Mot. at 2.)  In response, Ms. Hancock argues that her claim does not fail because

she alleges six theories for breach of fiduciary duty, and Defendants address only one

theory—her contention that Aetna unreasonably delayed its decision on her appeal.

(Resp. at 2.)  In reply, Defendants recast their initial argument, stating that the first, third,

fifth, and sixth theories "are clearly related to the timing of processing [Ms. Hancock's]

benefit claims" (Reply at 6), which Defendants addressed in their motion.  Defendants

argue that the rest of Ms. Hancock's theories "are more properly considered in the

//

//

---

analyze this proffered evidence to determine whether it creates a genuine dispute of material fact. *See infra* § III.B.2.a; *Nissan Fire & Marine*, 210 F.3d at 1106; *Celotex*, 477 U.S. at 324.

context of Plaintiff's benefit claim under 1132(a)(1)(B)" and "should not be considered as part of the breach of fiduciary duty claim."[9] (*Id.*)

The court finds that Defendants move for summary judgment on only one of Ms. Hancock's theories of breach—unreasonable delay. Aetna first extended its argument to Ms. Hancock's other theories of breach in its reply brief, which is improper. *United States ex rel. Giles v. Sardie,* 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."). Even if Defendants' argument were proper, however, only Ms. Hancock's first theory—that Aetna unreasonably delayed a decision on her appeal—is directly related to the timeliness of Aetna's decision. (*See* SAC ¶ 5.10 (stating six theories of breach).) The other theories are distinct, even if they necessarily relate in some way to the timing of Aetna's appeals decision and Aetna's decision to deny LTD benefits. Accordingly, the court analyzes whether Defendants are entitled to summary judgment on Ms. Hancock's theory that Defendants unreasonably delayed the adjudication of her appeal. (*See* Mot. at 9-13.)

//

//

//

---

[9] Defendants do not address whether the theory of breach of fiduciary duty on which they move for summary judgment—that Defendants unreasonably delayed a decision on her appeal— is cognizable. However, courts in the Ninth Circuit have allowed similar theories. *See, e.g.*, *Gurasich v. IBM Ret. Plan*, No. C-14-02911 DMR, 2014 WL 5454525, at *4 (N.D. Cal. Oct. 27, 2014); *see also* 29 U.S.C. § 1132(a)(3) (allowing a breach of fiduciary duty claim to remedy violations of ERISA or the terms of the plan).

### a. Timeliness of Appeal Decision

The DOL's ERISA regulations require that a claimant's LTD benefits appeal be decided within 45 days of when the claimant filed the appeal. *See* 29 C.F.R. § 2560.503-1(i)(1)(i); *id.* § 2560.503-1(i)(3)(i). The plan administrator may take an additional 45 days to issue a decision if the administrator determines that "special circumstances . . . require an extension of time for processing the claim." *Id.* § 2560.503-1(i)(1)(i). If the plan administrator concludes that special circumstances necessitate an extension, the administrator must notify the claimant in writing of the additional time and state why it is utilizing the additional time. *Id.* § 2560.503-1(i)(1)(i); *id.* § 2560.503-1(i)(3)(i). The regulations state that "the need to hold a hearing, if the plan's procedures provide for a hearing," might be a special circumstance. *Id.* § 2560.503-1(i)(1)(i). Otherwise, the regulations do not define special circumstances.

In addition, Aetna's policies provide that a claimant "will ordinarily be notified of the decision not later than 45 days after the appeal is received." (AR at AET000079.) The policy also states that "[i]f special circumstances require an extension of time up to an additional 45 days, you will be notified of such extension during the 45 days following receipt of your request" and "[t]he notice will indicate the special circumstances requiring an extension and the date by which a decision is expected." (*Id.*) Aetna's procedures define special circumstances as "reasons beyond the control of the plan," such as a "lack of sufficient clinical information or other external information needed to make a determination." (*Id.* at AET03737.) External information "can be [from] the claimant,

//

employer, provider, [independent medical examination,] or peer physician reviews." (*Id.*)

There is little case law addressing what constitutes special circumstances or when something is beyond the control of the plan, but one district court recently addressed the issue. *See Salisbury v. Prudential Ins. Co. of Am.*, --- F. Supp. 3d ---, 2017 WL 780817 (S.D.N.Y. Feb. 28, 2017). In determining what standard of review applied to the plaintiff's benefits denial claim, *see id.*, at *2, the District Court for the Southern District of New York held that an extension to review information in the plaintiff's file that remained under physician and vocational review could not constitute a valid special circumstance, *id.*, at *4. The court reached its conclusion after reviewing the DOL's preamble to the applicable regulations. *Id.*, at *3. The preamble states that "'the time periods for decisionmaking are generally maximum periods, not automatic entitlements.'" *Id.* at *4 (quoting ERISA Rules & Regulations for Admin. & Enforcement; Claims Procedures ("Preamble"), 65 Fed. Reg. 70,246, 70,250 (Nov. 21, 2000)). The preamble also states that "'it may be unreasonable' to seek an extension if the 'claim presents no difficulty whatsoever'" and that "'an extension may be imposed only for reasons beyond the control of the plan.'" *Id.* (quoting Preamble); *see also Reeves v. Unum Life Ins. Co. of Am.*, 376 F. Supp. 2d 1285, 1293 (W.D. Okla. 2005) (quoting 29 C.F.R. § 2560.503-1(i)(1)(i)) ("An example of a special circumstance justifying an extension of the review time is 'the need to hold a hearing.'"). Finally, the court noted that the preamble "suggested that simply having too much work does not constitute an acceptable justification" for an extension. *Salisbury*, 2017 WL 780817, at

*4. Based on the preamble's guidance, the court concluded that the plan administrator's proffered special circumstance—needing additional time to review "the information in Ms. Salisbury's file which remains under physician and vocational review"—was insufficient. *Id.* The court reached this conclusion because "virtually every appeal of the denial of a disability benefits claim will require 'physician and vocational review,'" and that review therefore cannot be considered "special." *Id.*

As *Salisbury* demonstrates, the DOL's preamble and regulations contemplate that a situation beyond the control of the plan constitutes a special circumstance that necessitates an extension. *See* Preamble, 65 Fed. Reg. at 70,250. As with special circumstances, there is limited case law defining when a situation is beyond the control of the plan. But in one example, the District Court for the Eastern District of Pennsylvania concluded that the plaintiff's failure to receive periodic statements under the plan was beyond the control of the plan because the plaintiff had provided an incorrect mailing address. *Askew v. R.L. Reppert, Inc.*, No. 11-cv-04003, 2016 WL 447060, at *13 (E.D. Pa. Feb. 5, 2016); *see also Cross v. Fleet Reserve Ass'n Pension Plan*, No. WDQ-05-0001, 2006 WL 6461992, at *7 (D. Md. Sept. 28, 2006) (concluding that there was no evidence that a situation was reasonably within the defendant's control).

The court concludes on the record before it that Aetna has not met its initial burden of demonstrating that there is no genuine dispute of material fact whether Aetna unreasonably delayed Ms. Hancock's appeal by invoking a 45-day extension. *See Anderson*, 477 U.S. at 322. On September 26, 2016, Aetna notified Ms. Hancock's counsel that it was invoking the 45-day extension because Aetna "referred your client's

file for a medical review, which has not been completed yet." (AET000993.) Aetna characterizes this medical review as a "peer review," which Aetna's policies state constitutes a special circumstance because the time by which the peer reviewer will complete his review is beyond the control of the plan. (*See* Reply at 11 (citing AR at AET03737).)

Aetna's argument requires the court to disregard the 26 days during the appeals process during which Aetna failed to contact a peer reviewer or assign Ms. Hancock's file to peer review until the twenty-eighth day. (*See* AR at AET002189-91.) Aetna fails to address the events leading up to the peer review, and, accordingly, there is no evidence or argument before the court regarding the reasonableness of Aetna's decision to wait to assign the peer review until the twenty-eighth day—nearly two-thirds of the way into the initial 45-day period. As Defendants implicitly acknowledge, Aetna was in control of the appeal before this date. (*See* Mot. at 4 ("As of September 26, 2016, the claims file was outside the control of Aetna so there could be no further action or final determination on whether [Ms. Hancock] was functionally impaired from returning to any occupation.").) In addition, Aetna points the court to no authority to suggest that simply because a plan administrator states that an event is out of the Plan's control at some point during the 45 days, an extension is necessarily warranted. (*See generally id.*; Reply.)

For these reasons, based on the facts before it and viewing the evidence in the light most favorable to Ms. Hancock, the court cannot conclude as a matter of law that the timing of Aetna's appeal decision was reasonable. Aetna's assignment of the peer review on the twenty-eighth day of the 45-day appeal period raises a genuine dispute over

whether any delay was beyond the control of the plan or due instead to the timing of Aetna's assignment. If the delay was within Aetna's control, a reasonable factfinder could conclude that Aetna unreasonably delayed a decision on Ms. Hancock's appeal. Accordingly, Defendants have not met their burden of demonstrating a lack of a genuine dispute of material fact, and the court denies Defendants' motion for summary judgment on this theory of breach of fiduciary duty.

### b. Public Policy Considerations

Finally, Defendants argue that public policy considerations should lead the court to "conclude that as a matter of public policy Defendants did not breach their fiduciary duty when evaluating [Ms. Hancock's] claim." (Mot. at 15.) Defendants contend that allowing a breach of fiduciary duty claim to go forward on this theory puts plan administrators in "a no-win situation" because they risk being "punished for seeking extensions in order to fully consider the available medical records . . . or [they] rush through the evaluation." (*Id.*) Finally, Defendants state that "the regulations are more flexible than [Ms. Hancock's] strict 45-day requirement in nearly every circumstance." (*Id.*)

The court finds that the DOL regulations and the preamble to them appropriately define the balance that plan administrators should strike in evaluating LTD benefits appeals. Although the regulations permit a 45-day extension for special circumstances beyond the control of the plan, *see* 29 C.F.R. § 2560.503-1(i)(1)(i); *id.* § 2560.503-1(i)(3)(i), the preamble to the regulations makes clear that "'the time periods for decisionmaking are generally maximum periods, not automatic entitlements.'"

*Salisbury*, 2017 WL780817, at *4 (quoting Preamble, 65 Fed. Reg. at 70,250). The preamble provides some additional guidance by stating that "'it may be unreasonable' to seek an extension if the 'claim presents no difficulty whatsoever'" and that "'an extension may be imposed only for reasons beyond the control of the plan.'" *Id.* (quoting Preamble, 65 Fed. Reg. at 70,250). Accordingly, plan administrators must demonstrate a special circumstance justifying an extension of time to decide an appeal. The court has applied that standard in considering Defendants' motion for partial summary judgment, and the court concludes that the public policy considerations Defendants raise do not dictate a different outcome.

## C. Discovery Issues

The parties also raise several discovery disputes related to Ms. Hancock's breach of fiduciary duty claim. (*See* Resp. at 3-4; *see also* Pl. Statement (Dkt. # 34); Defs. Statement (Dkt. # 36); Pl. Supp. Statement (Dkt. # 40); Defs. Supp. Statement (Dkt. # 41).) On April 17, 2017, the court held a telephonic hearing on the discovery issues. (*See* 4/17/17 Min. Entry.) At that time, the court suspended discovery related to the breach of fiduciary duty claim while the motion for partial summary judgment was pending. (*Id.*) Having ruled on that motion, the court orders the parties to meet and confer regarding whether the discovery matters they raised prior to this ruling are still in issue. (*See id.*) If so, the parties may file discovery motions related to the breach of fiduciary duty claim within seven days of the entry of this order. (*Id.*) The parties may file a response to any discovery motion no later than ten days after the filing of the

//

1  motion.  (*Id.*)  At this time, the court does not authorize further briefing on any discovery

2  motion.  (*Id.*)

## IV.    CONCLUSION

4        For the foregoing reasons, the court DENIES Defendants' motion for partial

5  summary judgment (Dkt. # 26).  The court further ORDERS the parties to review the

6  court's April 17, 2017, order (Dkt. # 42) regarding discovery disputes related to the

7  breach of fiduciary duty claim and re-raise any live discovery disputes pursuant to the

8  terms articulated in this order.

9        Dated this 3rd day of May, 2017.

JAMES L. ROBART
United States District Judge