UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUDITH HANCOCK,

                                    Plaintiff,

                    v.

AETNA LIFE INSURANCE
COMPANY, et al.,

                                    Defendants.

CASE NO. C16-1697JLR

ORDER ON DISCOVERY
MOTIONS

## I.   INTRODUCTION

Before the court are:  (1) Plaintiff Judith Hancock's motion to compel discovery

(MTC (Dkt. # 44)); (2) Defendants Aetna Life Insurance Company ("Aetna"), Boeing

Company Employee Health and Welfare Plan (Plan 503) ("Plan 503"), and Employee

Benefit Plans Committee's ("the Committee") (collectively, "Defendants") motion for a

protective order (MFPO (Dkt. # 46)); and (3) Defendants' motion to strike Aaron

Pailthorp's declaration (MTS (Dkt. # 56)).  The court has considered the motions, the

1  parties' submissions in support of and opposition to the motions, the relevant portions of

2  the record, and the applicable law.  Being fully advised,[1] the court GRANTS in part and

3  DENIES in part Ms. Hancock's motion to compel, GRANTS in part and DENIES in part

4  Defendants' motion for a protective order, and DENIES as moot Defendants' motion to

5  strike Mr. Pailthorp's declaration.

6                        **II.    BACKGROUND**

7           This case arises from Aetna's denial of long-term disability benefits ("LTD

8  benefits") to Ms. Hancock.  (*See* SAC (Dkt. # 24) ¶¶ 1.2, 4.40, 4.51.)  Ms. Hancock

9  worked at the Boeing Company ("Boeing") from 1989 until October 2012, when she took

10 leave for cancer treatment.  (Hancock Decl. (Dkt. # 31) ¶ 3.)  Ms. Hancock worked as a

11 Human Resources Generalist at the time she took leave.  (*See* Admin. Record ("AR")

12 (Dkt. # 27) at AET000272.)[2]

13          While at Boeing, Ms. Hancock participated in the Group Life and Accident and

14 Health Insurance Policy ("the Plan").  (*See generally id.* at AET000001-191.)  Aetna

15 issued the Plan to Boeing (*see id.*), and Ms. Hancock alleges that Aetna is an

16 administrator and fiduciary of the Plan as those terms are defined under the Employee

17 Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (SAC

18 ¶¶ 4.8-4.9).  The Committee also administers the Plan.  (*Id.* ¶ 4.3.)  Plan 503 is an

19 "employee benefit plan" within the meaning of ERISA.  (*Id.* ¶¶ 4.2.)

20

21          [1] No party requested oral argument, and the court determines that oral argument would
not help the court's disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

22          [2] The court cites the Bates-stamped page numbers of the administrative record.

ORDER - 2

1    The Plan defines "disabled" for purposes of LTD benefits in pertinent part:

2    From the date that you first become disabled and until Monthly Benefits are
     payable for 24 months, you will be deemed to be disabled on any day if:
3    • you are not able to perform the material duties of your own occupation
     solely because of: disease or injury; and
4    • your work earnings are 80% or less of your adjusted predisability earnings.

5    After the first 24 months that any Monthly Benefit is payable during a period
     of disability, you will be deemed to be disabled on any day if you are not
6    able to work at any reasonable occupation (this is any gainful activity for
     which you are, or may reasonably become fitted by education training or
7    experience. It does not include work under an approved rehabilitation
     program) solely because of: disease; or injury.

8    (*See id.* at AET000058 (emphasis omitted); *see also id.* at AET000061; SAC ¶ 4.20.)

9
     Ms. Hancock alleges that on October 3, 2012, she became "unable to perform the
10
     material duties of her own occupation" when she underwent surgery and "extensive
11
     chemotherapy" to treat cancer. (*Id.* ¶ 4.22.) Ms. Hancock applied for short-term
12
     disability benefits under the Plan, and Aetna agreed that Ms. Hancock was disabled under
13
     the Plan and entitled to short-term disability benefits. (AR at AET000530-31.)
14
     Aetna later found Ms. Hancock disabled for purposes of receiving LTD benefits
15
     (*id.* at AET001120-21, AET001265-66), but on February 25, 2016, Aetna terminated Ms.
16
     Hancock's LTD benefits effective February 26, 2016 (*id.* at AET000980-83). Ms.
17
     Hancock appealed the termination on August 15, 2016 (*id.* at AET001215-1589), and
18
     Aetna received Ms. Hancock's appeal on August 18, 2016 (*id.* at AET002173). In
19
     support of her appeal, Ms. Hancock provided a declaration from her doctor, her own
20
     declaration, medical records, and medical journal articles describing her condition. (*See*
21
     *id.* at AET001215-1589) She contends that she is disabled by the following conditions:
22

ORDER - 3

1  "peripheral neuropathy and a type of cognitive impairment sometimes referred to as

2  'chemo brain'" (SAC ¶ 4.33; *see also* AR at AET001240); Sjogren's syndrome (SAC

3  ¶ 4.34; AR at AET001240); a lack of feeling in her fingertips and feet, burning pain in

4  her fingertips, sharp pain in her hands, burning pain in her feet and lower legs, painful

5  cramping in her toes and calves, and swollen ankles and feet (SAC ¶ 4.35; AR at

6  AET001240-41).  Ms. Hancock also takes a medication that causes fatigue, dizziness,

7  difficulty concentrating, confusion, and memory issues.  (SAC ¶¶ 4.37-4.38; AR at

8  AET001241.)  Because of these conditions, Ms. Hancock alleges that she is "unable to

9  work at any reasonable occupation."  (SAC ¶ 4.39.)

10       Under applicable ERISA regulations, Aetna had 45 days to decide Ms. Hancock's

11  appeal unless special circumstances warranted an additional 45 days to consider the

12  appeal.  *See* 29 C.F.R. § 2560.503-1(i)(1)(i); *id.* § 2560.503-1(i)(3)(i).  On September 13,

13  2016, Aetna confirmed with Ms. Hancock and her counsel that Aetna had received all of

14  the records Ms. Hancock intended for Aetna to consider in her appeal.  (AR at

15  AET000992, AET002173.)  On the same day, Aetna also contacted an independent third

16  party to conduct a peer review of Ms. Hancock's file.  (*Id.* at AET002189-91.)  Aetna

17  assigned the peer review on September 14, 2016.  (*Id.* at AET002191.)  On September

18  26, 2016, the fortieth day after Ms. Hancock appealed Aetna's LTD benefits

19  determination, Aetna sent Ms. Hancock a notice that Aetna was invoking a 45-day

20  extension to decide her appeal.  (*Id.* at AET000993.)  The notice informed Ms. Hancock

21  that her appeal would be decided by November 10, 2016, and that the reason for the

22  //

1    extension was to give the peer reviewer enough time to complete his review.  (*Id.*)  The

2    peer reviewer completed his review on September 28, 2016.  (*Id.* at AET002192-93.)

3        Aetna informed Ms. Hancock on October 20, 2016, that Aetna was upholding its

4    decision to deny LTD benefits under the Plan.  (*Id.* at AET000997-99.)  "[B]ased on the

5    clinical review and vocational review," Aetna concluded that Ms. Hancock was "no

6    longer considered disabled from any occupation."  (*Id.* at AET000982.)  Aetna decided

7    Ms. Hancock's appeal in 64 days.  (*See id.* at AET000997-99.)

8        Ms. Hancock brings two claims under ERISA:  (1) "to recover the long-term

9    disability benefits due her under the Plan, to enforce her rights under the Plan[,] and to

10    clarify her rights to future benefits under the Plan" (SAC ¶ 5.4); *see also* 29 U.S.C.

11    § 1132(a)(1)(B); and (2) breach of fiduciary duty (SAC ¶¶ 5.6-5.18); *see also* 29 U.S.C.

12    § 1132(a)(3).  Ms. Hancock asserts six theories of breach of fiduciary duty:  (1)

13    unreasonably delaying and then denying Ms. Hancock's appeal; (2) unreasonably failing

14    to investigate all of the bases on which to pay Ms. Hancock's claims and refusing to give

15    her interests or the interests of the Plan at least as much consideration as Aetna gave its

16    own; (3) unreasonably failing to adopt and implement reasonable standards to promptly

17    and fairly investigate, process, and adjudicate Ms. Hancock's appeal; (4) unreasonably

18    engaging in a selective review of the evidence to minimize the evidence supporting the

19    continuation of benefits while focusing exclusively on evidence supporting the

20    termination of benefits; (5) unreasonably failing to establish administrative processes and

21    safeguards to ensure and verify appropriately consistent decisionmaking; and (6)

22    //

1  unreasonably failing to train and supervise employees to ensure they are aware of such

2  administrative processes and safeguards.  (SAC ¶ 5.10.)

3      On May 3, 2017, the court denied Defendants' motion for partial summary

4  judgment on Ms. Hancock's breach of fiduciary duty claim, concluding that Defendants

5  had not met their burden of demonstrating as a matter of law that the timing of Aetna's

6  decision on Ms. Hancock's appeal was reasonable.  (5/3/17 Order (Dkt. # 43) at 20-21.)

7  The court also determined that Defendants had not moved for summary judgment on any

8  other breach of fiduciary duty theories Ms. Hancock pleads.  (*Id.* at 15-16.)

9      The parties' dispute centers on Ms. Hancock's discovery requests related to her

10  breach of fiduciary duty claim.  The dispute requests are (1) interrogatories regarding the

11  number of appeals under the Plan and the number of Plan participants who received

12  extension letters; (2) interrogatories regarding personnel information about the claims

13  handlers who addressed Ms. Hancock's appeal and claim; (3) Aetna's claims manual; (4)

14  depositions of current Aetna employee Douglas Burdick and former Aetna employee

15  Kathy Leonard, both of whom worked on Ms. Hancock's appeal; (5) deposition of Dr.

16  Aren Giske, an independent physician reviewer who evaluated Ms. Hancock's medical

17  condition; and (6) Federal Rule of Civil Procedure 30(b)(6) depositions of Aetna and

18  third-party vendor Professional Disability Associates, LLC ("PDA").  (*See* MTC at 5-11;

19  Crawford Decl. (Dkt. # 45) ¶¶ 3, 5-10, Exs. 1, 4-5, 7-9; MFPO at 3-4; Stevens Decl. (Dkt.

20  # 47) ¶¶ 2-3, Exs. A-F.)

21      After the court's summary judgment ruling, the parties met and conferred

22  regarding these discovery requests but have been unable to agree on the proper scope of

1    discovery.  (*See* Crawford Decl. ¶ 2; Stevens Decl. ¶¶ 2-3.)  The parties' competing

2    discovery motions as well as Defendants' motion to strike Mr. Pailthorp's declaration are

3    now before the court.

## III.    ANALYSIS

### A.    Discovery in ERISA Cases

6          The parties dispute the standard that applies to discovery in ERISA cases

7    involving a breach of fiduciary duty claim.  (*See* MTC at 4; MFPO at 11.)  Ms. Hancock

8    argues that "traditional discovery rules" apply to breach of fiduciary duty claims under

9    ERISA.  (MTC at 4.)  Defendants, on the other hand, contend that "[w]hen de novo

10   review applies, the [c]ourt limits the review to the evidence in the administrative record."

11   (MFPO at 11.)

12         Generally, plaintiffs in ERISA cases involving the denial of benefits are not

13   entitled to discovery as "broad and overreaching . . . as in other types of litigation."

14   *Klund v. High Tech. Sols., Inc.*, 417 F. Supp. 2d 1155, 1159 (S.D. Cal. 2005); *see also*

15   *Medford v. Metro. Life Ins. Co.*, 244 F. Supp. 2d 1120, 1128 (D. Nev. 2003) (stating that

16   the scope of discovery in ERISA cases "should serve both the goals of ERISA and the

17   goal of obtaining justice for the parties involved in the litigation").  A plaintiff may,

18   however, be entitled to additional discovery when an ERISA plaintiff alleges a breach of

19   fiduciary duty claim under Section 1132(a)(3).  *See, e.g.*, *Jensen v. Solvay Chems., Inc.*,

20   520 F. Supp. 2d 1349, 1355-56 (D. Wy. 2007); *Malbrough v. Kanawha Ins. Co.*, 943 F.

21   Supp. 2d 684, 692-93 (W.D. La. 2013) (discussing the trend of courts allowing limited

22   discovery regarding Section 1132(a)(3) claims); *Moran v. Life Ins. Co. of N. Am.*

1    *Misericordia Univ.*, No. 3:CV-13-765, 2014 WL 4251604, at *9 (M.D. Pa. Aug. 27,

2    2014) (stating that courts in the Third Circuit have concluded that discovery regarding a

3    Section 1132(a)(3) claim is not subject to the same restrictions as discovery regarding a

4    denial of benefits claim).  Thus, "discovery beyond the administrative record may be

5    appropriate for claims under Section 1132(a)(3) that do not arise from the written ERISA

6    plan terms, as there may be no administrative record for such claims."  *Colaco v. ASIC*

7    *Advantage Simplified Pension Plan*, 301 F.R.D. 431, 435 (N.D. Cal. 2014); *see also*

8    *Guenther v. Lockheed Martin Corp.*, 646 F. App'x 567, 570 (9th Cir. 2016) (directing

9    that on remand, "the court should allow discovery of evidence relevant to [breach of

10   fiduciary duty claim[], including evidence outside the administrative record"); *Coffey v.*

11   *Hartford Life & Accident Ins. Co.*, 318 F.R.D. 320, 323 (W.D. Va. 2017) ("A number of

12   district courts . . . have allowed limited extra-record discovery for claims under

13   § 1132(a)(3).").  Discovery outside the administrative record is nonetheless not usually

14   far-reaching.  *See Coffey*, 318 F.R.D. at 323; *Colaco*, 301 F.R.D. at 435.

15         Even when a plaintiff is entitled to discovery beyond the administrative record in

16   an ERISA case, the plaintiff may only "obtain discovery regarding any nonprivileged

17   matter that is relevant to any party's claim or defense and proportional to the needs of the

18   case."[3]  Fed. R. Civ. P. 26(b)(1).  Whether discovery is proportional to the needs of the

19

20         [3] Despite Ms. Hancock's contention that "[i]nformation is relevant if reasonably
     calculated to lead to the discovery of admissible evidence" (MTC at 4 (internal quotation marks
21   omitted)), "[t]he 2015 amendments to Rule 26 'eliminated the "reasonably calculated" phrase as
     a definition for the scope of permissible discovery,'" *Medicinova Inc. v. Genzyme Corp.*,
     No. 14cv2513-L(KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) (quoting *In re Bard*
22   *IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016)).  The court instructs Ms.

1    case hinges on "the importance of the issues at stake in the action, the amount in

2    controversy, the parties' relative access to relevant information, the parties' resources, the

3    importance of the discovery in resolving the issues, and whether the burden or expense of

4    the proposed discovery outweighs its likely benefit." *Id.* The court must limit discovery

5    that is not proportional to the needs of the case. *See Fox v. State Farm Ins. Co.*,

6    No. C15-0535RAJ, 2016 WL 304784, at *1 (W.D. Wash. Jan. 26, 2016).

7           Against this backdrop, the court analyzes the discovery motions. A party may

8    move to compel discovery if the movant has in good faith conferred with the party

9    opposing discovery to obtain the requested discovery without the court's intervention.

10   *See* Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of demonstrating that

11   the information it seeks is relevant and that the responding party's objections lack merit.

12   *See Bluestone Innovations LLC v. LG Elecs., Inc.*, No. C-13-01770-SI (EDL), 2013 WL

13   6354419, at *2 (N.D. Cal. Dec. 5, 2013). The party must therefore "inform the Court

14   which discovery requests are the subject of the motion to compel, and, for each disputed

15   response, why the information sought is relevant and why the responding party's

16   objections are not meritorious." *Adams v. Yates*, No. 1:10-cv-0671-AWI-MJS, 2013 WL

17   5924983, at *1 (E.D. Cal. Nov. 1, 2013).

18          On a showing of good cause, the court may issue a protective order pursuant to

19   Federal Rule of Civil Procedure 26(c). *See* Fed. R. Civ. P. 26(c). The party seeking the

20   protective order must show that it will suffer "specific prejudice or harm" if the court

21    

22   Hancock's counsel to carefully review the continued applicability of all legal authority he cites to the court.

does not issue a protective order.  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); *Braun v. Primary Distrib. Doe No. 1 & Does 2-69*, No. 12-3690 YGR (JSC), 2012 WL 12895845, at *2 (N.D. Cal. Nov. 19, 2012) (stating that the burden is on the party seeking the protective order); *Miller v. York Risk Servs. Grp.*, No. CV-13-01419-PHX-JWS, 2014 WL 11515634, at *2 (D. Ariz. June 20, 2014) (stating that good cause is generally shown when disclosure would lead to "a clearly defined, specific[,] and serious injury").  The protective order may prohibit the requested discovery, limit the scope of discovery, or fix the terms of disclosure.  *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (citing Fed. R. Civ. P. 26(c)).

**B.    The Discovery Motions**

Ms. Hancock moves to compel (1) responses to interrogatories regarding the number of appeals under the Plan and the number of Plan participants who received extension letters; (2) responses to interrogatories regarding Aetna's handling of Boeing's LTD claims; (3) production of Aetna's claims manual; and (4) depositions of Douglas Burdick, Kathy Leonard, Aren Giske, a Rule 30(b)(6) designee for Aetna, and a Rule 30(b)(6) designee for third-party PDA.  (MTC at 4.)  Defendants, on the other hand, move for a protective order precluding or limiting these same categories of discovery.  (MFPO at 5-10.)  Defendants argue that Ms. Hancock's intended discovery is unduly burdensome, duplicative, irrelevant, and not proportional to the needs of the case.  (*Id.*); *see also* Fed. R. Civ. P. 26(b)(1).  For each category of discovery, the court addresses whether Ms. Hancock has met her burden of compelling the discovery.  If necessary, the court then addresses Defendants' request for a protective order.

1    1.  <u>Responses to Interrogatories Regarding Appeals</u>

2    Ms. Hancock's first interrogatory in this category calls on Defendants to state the

3    number of appeals of LTD benefit denials that Aetna received from any person claiming

4    LTD benefits under the Plan for the years 2012 through 2016.  (Crawford Decl. ¶ 3, Ex. 1

5    (Dkt. # 45-1) at 7.)  Ms. Hancock's second interrogatory requests for each such appeal

6    that Defendants identify the number of times in each year that Aetna sent a claimant an

7    "Appeal Extension Letter," a "45 Day Extension Letter," or otherwise stated that Aetna

8    required more time to make an appeals determination.  (*Id.*)  Defendants object to the

9    interrogatories as unduly burdensome.  (MTC Resp. (Dkt. # 53) at 5.)  They contend that

10   this information is difficult to obtain and seeks "confidential and private information of

11   claims which contain medical information related to other Boeing employees who are not

12   parties to the suit."  (*Id.*)

13   Section 1132(a)(3)—the ERISA provision under which Ms. Hancock alleges

14   breach of fiduciary duty—"authorizes lawsuits for individualized equitable relief."

15   *McGlasson v. Long Term Disability Coverage for All Active Full-Time & Part-Time*

16   *Emps.*, 161 F. Supp. 3d 836, 842 (D. Ariz. 2016); *see also* 29 U.S.C. § 1132(a)(2)

17   (authorizing plan-wide relief).  As the court clarified in its May 3, 2017, order on partial

18   summary judgment, Ms. Hancock seeks individualized—rather than plan-wide—relief on

19   her breach of fiduciary duty claim.  (5/3/17 Order at 14.)  Accordingly, her discovery

20   must be directed at materials related to proving a claim for individual relief.

21   Given that Ms. Hancock asserts an individual claim, the court concludes that these

22   interrogatories are not relevant and proportional to the needs of the case.  *See* Fed. R. Civ.

P. 26(b)(1).  The identification of every appeal Aetna has received under the Plan for the

past five years and how many times Aetna took additional time to decide an appeal goes

beyond information Ms. Hancock needs to determine whether Aetna unreasonably

delayed deciding Ms. Hancock's appeal.  (*See* SAC (Dkt. # 24) ¶ 5.10.)  In addition, these

requests are broader than necessary given that Ms. Hancock seeks an injunction affording

individual relief.  (*See id.* at 17 (prayer for relief).)  The court thus denies Ms. Hancock's

motion to compel responses to these interrogatories.

Defendants also contend that responding to these interrogatories would require

Aetna to run a report not typically run in the ordinary course of business, which would

take several weeks for Aetna's team to run and filter.  (MFPO at 5-6 (citing Stevens

Decl., Ex. B (interrogatory response)).)  In opposition to Defendants' motion for a

protective order, Ms. Hancock submits the declaration of Aaron Pailthorp, a Software

Test Engineer.  (*See* Pailthorp Decl. (Dkt. # 50) ¶ 2.)  Mr. Pailthorp avers that based on

the eight Aetna "Chronological Claims notes" he reviewed (*id.* ¶ 3), he believes that the

reports "could be easily and efficiently accomplished with minimal expense of time by

trained staff" (*id.* ¶ 7).

Defendants move to strike Mr. Pailthorp's declaration because it lacks foundation

and unfairly prejudices Defendants who have not had an opportunity to respond to the

declaration.[4]  (MTS at 1-2.)  Because the court has determined that these interrogatories

---

[4] The court did not permit the parties to file reply briefs in support of their respective
discovery motions.  (5/3/17 Order at 22-23.)

1    are not relevant and proportional to the needs of the case, the court does not rely on Mr.

2    Pailthorp's declaration and denies Defendants' motion as moot.[5]  *See infra*.

3            2.  Aetna's Handling of Boeing's LTD Claims

4            Ms. Hancock next moves to compel discovery regarding Aetna personnel who

5    manage LTD appeals.  (*See* MTC at 6-7; Crawford Decl. ¶ 5, Ex. 4.)  Specifically, Ms.

6    Hancock requests that Aetna answer the following interrogatories:

7            INTERROGATORY NO. 1:  Does Aetna have a department and/or division
             and/or unit for managing claims and appeals submitted by employees of the
8            Boeing Company? If your answer is anything other than an unqualified
             negative, please identify each and every person working in that department
9            and/or division and/or unit, and state his or her title, for each of the following
             years: 2012, 2013, 2014, 2015 and 2016.
10
             INTERROGATORY NO. 2: With respect to Douglas Burdick, Catherine
11           Irelan, Kathy Leonard and Tyler Thornton, please describe in detail his or
             her employment position with Aetna, describe all training and education
12           (including the source) each has received with respect to the processing of
             claims and/or appeals relating to long term disability insurance, identify their
13           supervisors, and describe all duties and functions each performed with
             respect to plaintiffs appeal dated August 15, 2016.
14
             INTERROGATORY NO. 3: Identify and describe all forms of
15           compensation, including without limitation, any financial incentives,
             bonuses, commissions or other monetary awards for Douglas Burdick,
16           Catherine Irelan, Kathy Leonard and Tyler Thornton, in each of the following
             years: 2012, 2013, 2014, 2015 and 2016.  As to each, state the amount of
17

18            [5] In response to Mr. Pailthorp's declaration, Defendants filed a declaration from Stephen
      E. Simpson, an Aetna employee with knowledge of Aetna's appeal database and the necessary
19    steps to gather information to respond to the interrogatories.  (Simpson Decl. (Dkt. # 58) ¶ 2.)
      Ms. Hancock files a surreply in which she seeks to strike Mr. Simpson's declaration as
20    noncompliant with Local Civil Rule 7(g)(2).  (Surreply (Dkt. # 60) at 1); Local Rules W.D.
      Wash. LCR 7(g)(2) (stating that a surreply must be filed within five days of the reply brief and
21    shall be strictly limited to addressing the request to strike).  Although Mr. Simpson's declaration
      goes beyond strictly addressing Defendants' request to strike, the court declines to strike Mr.
22    Simpson's declaration because it does not rely on either Mr. Pailthorp's or Mr. Simpson's
      declarations in making its ruling.

base compensation and/or salary for each person for each year, and the amount of any incentive, bonus or other award for each person for each year.

INTERROGATORY NO. 4: With respect to any financial incentives, bonuses, commissions or other monetary awards Aetna paid Douglas Burdick, Catherine Irelan, Kathy Leonard and Tyler Thornton, in each of the following years: 2012, 2013, 2014, 2015 and 2016, state the criteria for any such award.

(Stevens Decl. ¶ 2, Ex. C.)  Ms. Hancock also requests that Defendants produce the performance evaluations and reviews for these same four Aetna employees for the last five years.  (*Id.*; MTC at 7.)  Ms. Hancock argues that because "courts permit discovery on insurer's training, compensation[,] and employee evaluations in [Section] 1132(a)(1)(B) claims in order to explore the impact of the insurer's bias and self-interest, such discovery should certainly proceed in breach of fiduciary duty claims under § 1132(a)(3)."  (MTC at 7.)  Defendants argue that the information about these employees is not proportional, would duplicate discovery Aetna has already produced, and is highly confidential.  (MFPO at 7; MTC Resp. at 8.)

Because Ms. Hancock asserts that Defendants breached their fiduciary duty by failing to adequately train the employees working on Ms. Hancock's claim and appeal (SAC ¶ 5.10), the first and second interrogatories seek relevant information proportional to the needs of this case, *see* Fed. R. Civ. P. 26(b).  In addition, Defendants have not shown specific prejudice that would arise from responding to these interrogatories.  (*See* MFPO at 5-7.)  Thus, to the extent Defendants have additional information on the subject that they have not produced, Defendants must respond to these interrogatories.  Their response must describe the duties of Aetna employees who worked on Ms. Hancock's

1   claim and appeal, what specific tasks they performed in working on Ms. Hancock's case,

2   and the training Aetna gave them before and during the time they worked on Ms.

3   Hancock's case.  For the first interrogatory, however, Defendants need only identify

4   individuals who worked on Ms. Hancock's case.

5         Ms. Hancock's third interrogatory, fourth interrogatory, and requests for the

6   performance reviews of the four employees, however, are not relevant and proportional to

7   the needs of the case.  Courts may allow discovery into compensation or policies

8   regarding employee performance because it may reveal whether a conflict of interest

9   affected a benefits denial.  *See Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406,

10   413-14 (W.D. Ky. 2015); *but see id.* at 414 ("Areas such as . . . personnel files are not

11   discoverable.").  A conflict of interest arises when, for example, a plan administrator is

12   both the fiduciary and the sole source of funding for an unfunded plan.[6]  *See Abatie v.*

13   *Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 n.5 (9th Cir. 2006).  An insurer's "conflict

14   of interest is relevant to what evidence, if any, district courts should consider outside of

15   the administrative record."  *See Gonda v. Permanente Med. Grp., Inc.*, 300 F.R.D. 609,

16   614 (N.D. Cal. 2014); *Vancleave v. Boeing Co. Non-Union Long Term Disability Plan*,

17   No. C09-1512RSL, 2010 WL 8946093, at *1 (W.D. Wash. June 15, 2010).  Nonetheless,

18   "discovery on an insurer's purported conflict of interest" is not always available because

19   a conflict of interest does not have "any direct bearing on the merits analysis in a de novo

20   review."  *Gonda*, 330 F.R.D. at 614; *see also Abatie*, 458 F.3d at 963; *Waggener v.*

21

22         [6] Ms.  Hancock alleges that Aetna has such a conflict, but does not expressly address a
conflict in asserting her breach of fiduciary duty claim.  (*See* SAC ¶¶ 4.55, 5.10.)

ORDER - 15

1   *UNUM Life Ins. Co. of Am.*, 238 F. Supp. 2d 1179, 1183 (S.D. Cal. 2002) (stating that the

2   court should exercise its authority to consider additional evidence "when circumstances

3   clearly establish that additional evidence is necessary to conduct an adequate de novo

4   review of the benefit decision" (internal quotation marks omitted)).  Here, Ms. Hancock's

5   benefits denial claim is subject to de novo review.  (*See* MFPO at 11.)

6        Ms. Hancock states that the discovery she seeks is solely related to her breach of

7   fiduciary duty claim—not to her benefits denial claim.  (MTC at 1-2, 4.)  But Ms.

8   Hancock asserts only one theory of breach of fiduciary duty that touches on a purported

9   conflict, alleging that Defendants did not give Ms. Hancock's interests as much

10  consideration as they gave their own in deciding her appeal.  (SAC ¶ 5.10.)  Because Ms.

11  Hancock's discovery regarding a conflict is only marginally related to her breach of

12  fiduciary duty claim, the court concludes that Ms. Hancock has not met her burden of

13  compelling this discovery.  Her request for wide-ranging discovery regarding

14  compensation and private personnel information is disproportional to the needs of the

15  case.[7]  *See* Fed. R. Civ. P. 26(b)(1).  Indeed, Ms. Hancock "seek[s] discovery on the off

16  chance that she will uncover a conflict of interest," *Vancleave*, 2010 WL 8946093, at *2,

17  and this discovery will only minimally—if at all—assist in resolving Ms. Hancock's

18

19        [7] In support of her motion to compel, Ms. Crawford submits an order from the District
    Court for the District of Arizona.  (*See* Crawford Decl. ¶ 19, Ex. 17 (*Mullin v. Scottsdale

20  Healthcare Corp. Long Term Disability Plan*, No. CV-15-01547-PHX-DLR, Dkt. # 60 (D. Ariz.
    Jan. 28, 2016)).)  In that case, the court allowed discovery "pertaining to job descriptions, W-2s

21  and/or W-9s, employee performance goals and targets, and compensation plans."  *Mullin*, No.
    CV-15-01547-PHX-DLR, Dkt. # 60 at 5.  Here, however, Ms. Hancock seeks specific

22  performance evaluations and reviews from the four employees' personnel records.  (*See* Stevens
    Decl. ¶ 2, Ex. C.)

1  breach of fiduciary duty claim, Fed. R. Civ. P. 26(b)(1).  This discovery is therefore not

2  proportional to the needs of the case, and the court denies the motion to compel responses

3  to these interrogatories.

4      3.  Aetna's Claims Manuals

5      Ms. Hancock further moves to compel Defendants to produce Aetna's claims

6  manuals with respect to disability claims and appeals.  (MTC at 7-8; Crawford Decl. ¶ 6,

7  Ex. 5.)  Ms. Hancock's request "includes, without limitation, any and all internal rules,

8  standards, or guidelines in effect from January 1, 2015 to the present, with respect to: (a)

9  the handling, processing and administration of long-term disability claims; (b) the

10  handling, processing and administration of long-term disability appeals; (c) the hiring,

11  retaining or commissioning of outside medical professionals to perform examinations

12  and/or document reviews."  (Crawford Decl. ¶ 6, Ex. 5 at 4.)  Defendants state that they

13  "have produced the relevant policies and procedures related to the handling of claim

14  appeals," but contend that "[p]roduction of additional policies and procedures is not

15  relevant to [Ms. Hancock's] claim."  (MTC Resp. at 8.)  Defendants state that "the only

16  documents potentially relevant are those directly related to Plaintiff and the handling of

17  her appeal."  (*Id.* at 9; *see also* MFPO at 6 (arguing the same).

18      The court grants Ms. Hancock's motion to compel Aetna's guidelines regarding

19  LTD claims and appeals and hiring outside medical professionals to perform

20  examinations and reviews to the extent Aetna has not already produced such materials.

21  However, Defendants need only produce such policies that were in place during the

22  evaluation of Ms. Hancock's claim and appeal.  These materials are relevant to Ms.

1    Hancock's allegations that Defendants breached their fiduciary duty by failing to adopt

2    and implement reasonable standards to promptly and fairly investigate her appeal, to

3    establish administrative processes and safeguards to promote consistent decisionmaking,

4    and to investigate all of the bases on which Ms. Hancock's claims were based.  (SAC

5    ¶ 5.10.)  In addition, the court determined in ruling on summary judgment that

6    Defendants failed to demonstrate as a matter of law that Aetna's use of a medical peer

7    review in deciding Ms. Hancock's appeal constituted a special circumstance justifying

8    delay of the appeals decision by 45 days.  (*See* 5/3/17 Order at 20-21.)  Limiting the

9    discovery to those policies in place at the time her claim and appeal were pending

10   adequately addresses Defendants' concerns that discovery of the entire claims manual is

11   not proportional to the needs of the case.[8]  (MFPO at 6.)

12        4.  Depositions

13        Finally, Ms. Hancock seeks to depose five individuals:  (1) Douglas Burdick, an

14   Aetna employee; (2) Kathy Leonard, a former Aetna employee; (3) Aren Giske, a

15   physician who conducted Ms. Hancock's outside medical review; (4) a Rule 30(b)(6)

16   designee for Aetna; and (5) a Rule 30(b)(6) designee for non-party PDA.  As with other

17   discovery, Rule 26(b)(1) provides the appropriate scope for depositions.  *See New Show*

18   //

19

20        [8] Defendants further state that if the court orders them "to produce the entire claims
     manual, Defendants request a protective order to protect Aetna's confidential[], proprietary, and
21   financial information."  (MFPO at 7 (internal footnote omitted).)  Defendants may so move
     should the materials they must provide to Ms. Hancock contain confidential or proprietary
22   information.  The court encourages Defendants to use the model protective order for the Western
     District of Washington and file a protective order agreed upon with Ms. Hancock, if possible.

1    *Studios v. Needle*, No. CV 14-1250 CAS (MRWx), 2016 WL 6901692, at *2 (C.D. Cal.

2    Jan. 4, 2016).

3            a.   *Aetna Employees*

4            In their initial disclosures, Defendants stated that Mr. Burdick and Ms. Leonard

5    have knowledge regarding Ms. Hancock's benefits claim, appeal of the denial of her

6    benefits, and Aetna's application of policies and procedures to the claims handling and

7    appeals processes.  (*See* MTC at 9-10 (citing Crawford Decl. ¶ 6, Ex. 6 at 2).)

8    Defendants contend that depositions of Mr. Burdick and Ms. Leonard, who is retired,

9    would be duplicative and burdensome because Defendants have already produced

10   "sufficient information" regarding Aetna's handling of Ms. Hancock's claim and appeal

11   and Aetna's policies and procedures.  (MTC Resp. at 10.)  Because Aetna has already

12   produced policies and procedures regarding claims handling, Defendants contend that

13   "there is nothing further to which these two individuals could testify that would be

14   relevant to [Ms. Hancock's] breach of fiduciary duty claim."  (MFPO at 8.)

15           The court grants Ms. Hancock's motion to compel Mr. Burdick's and Ms.

16   Leonard's depositions.  The information to which Mr. Burdick and Ms. Leonard would

17   testify is relevant and proportional, given Ms. Hancock's theories of breach of fiduciary

18   duty.  (*See* SAC ¶ 5.10; MTC at 9-10 (citing Crawford Decl. ¶ 6, Ex. 6 at 2).)  Further,

19   Defendants have not met their burden of demonstrating specific prejudice arising from

20   these depositions, and Defendants have not adequately shown that Mr. Burdick's and Ms.

21   Leonard's testimony would duplicate written discovery.

22   //

1          *b. Dr. Aren Giske*

2          Ms. Hancock also seeks to depose Dr. Aren Giske, the outside physician who

3    independently reviewed Ms. Hancock's file.  (MTC at 10.)  Ms. Hancock contends that

4    Dr. Giske has information relevant to her breach of fiduciary duty claim because she

5    alleges that Aetna selectively reviewed the evidence in deciding her appeal.  (*Id.*)

6    Because Dr. Giske reviewed Ms. Hancock's file for Aetna, the court agrees that he has

7    information relevant to Ms. Hancock's breach of fiduciary duty claim.  Further, the

8    deposition is proportional given its importance in resolving the issues, even when

9    balanced against the expense Defendants say they will incur in defending this

10   deposition.[9]  *See* Fed. R. Civ. P. 26(c)(1); (Stevens Decl. ¶ 9.)  Although Defendants

11   answered interrogatories and produced documents related to Dr. Giske's review (*see*

12   Stevens Decl. ¶ 3, Ex. A), Defendants have not adequately demonstrated that "Dr. Giske

13   has nothing further to testify to related to the claim for breach of fiduciary duty" (MFPO

14   at 8).  For example, Dr. Giske could testify to how he applied Aetna's guidelines to his

15   review of Ms. Hancock's file and which evidence he considered in completing his

16   review.  For these reasons, the court grants Ms. Hancock's motion to compel Dr. Giske's

17   deposition.

18   //

19   //

20

21          [9] The court notes that Defendants' counsel's estimate of the cost to depose Dr. Giske may
     be overestimated if Dr. Giske resides in Gig Harbor, Washington, as Ms. Hancock's counsel
22   avers.  (*Compare* Stevens Decl. ¶ 9, *and* MFPO at 8, *with* MFPO Resp. (Dkt. # 49) at 8 (citing
     2d Crawford Decl. (Dkt. # 51) ¶ 6).)

1          *c. Rule 30(b)(6) Designees*

2          Ms. Hancock also seeks to depose Rule 30(b)(6) representatives from Aetna and

3 PDA. (MTC at 10-11.) Ms. Hancock's deposition of Aetna's designee will address

4 training and supervision of employees and guidelines and instruction Aetna provides to

5 entities with whom it contracts to conduct medical reviews. (*Id.* at 11 (citing Crawford

6 Decl. ¶ 7, Ex. 9).) Ms. Hancock's deposition of PDA will address the company's

7 financial arrangements with Aetna, instructions Aetna gives to PDA, and PDA's

8 marketing. (*Id.*) Ms. Hancock states only that "[t]hese two depositions seek information

9 relevant to Ms. Hancock's breach of fiduciary duty claims." (*Id.*) Defendants contend

10 that these depositions are not proportional and to the extent they are relevant, Ms.

11 Hancock can more effectively pursue this information through written discovery. (MTC

12 Resp. at 11; Stevens Decl. ¶ 9.)

13          Rule 30(b)(6) permits a party to depose an entity after "describ[ing] with

14 reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The

15 entity "must then designate one or more officers . . . to testify on its behalf" regarding

16 "information known or reasonably available" to the entity. *Id.* The court concludes that

17 Ms. Hancock has not met her burden of demonstrating that these depositions are

18 appropriate at this time. There is presently no indication that that the written discovery

19 regarding Aetna's training and supervision of its employees during the period Ms.

20 Hancock's claim and appeal were pending is insufficient. In addition, the information

21 Ms. Hancock seeks from PDA is not relevant and proportional to the needs of the case.

22 *See* Fed. R. Civ. P. 26(b)(1). PDA's marketing and financial arrangements are only

1   marginally likely to shed light on Ms. Hancock's breach of fiduciary duty claim when

2   viewed in terms of the expense of conducting the deposition.  (*See* Stevens Decl. ¶ 9.)  In

3   addition, the court granted Ms. Hancock's request for Aetna's policies about third-party

4   vendors from Aetna itself, and any further inquiry into that issue is duplicative.

5                                    **IV.    CONCLUSION**

6          For the reasons set forth above, the court GRANTS in part and DENIES in part

7   Ms. Hancock's motion to compel (Dkt. # 44), GRANTS in part and DENIES in part

8   Defendants' motion for a protective order (Dkt. # 46), and DENIES as moot Defendants'

9   motion to strike the declaration of Aaron Pailthorp (Dkt. # 56).

10         Dated this 20th day of July, 2017.

11

12

13                                    JAMES L. ROBART
                                      United States District Judge
14

15

16

17

18

19

20

21

22

ORDER - 22